IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JOHNNY W. KYLES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-3193-CV-S-DPR |
| | ) | |
| CELADON TRUCKING | ) | |
| SERVICES, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court is the Motion of Defendants Celadon Trucking Services, Inc. and Dwight Jones for Partial Summary Judgment. (Doc. 118.) Defendants move for judgment in their favor on Plaintiff's claims for punitive damages in Counts I-IV of the Complaint, and in favor of Celadon Trucking Services, Inc. on Counts III and IV of the Complaint. Upon review, the Motion will be **GRANTED**.

**I.  Background[1]**

This action stems from an incident that occurred on April 10, 2014 on Highway 63 in Oregon County, Missouri, when a tractor-trailer owned by Celadon Trucking Services, Inc. ("Celadon") and driven by Dwight Jones ("Jones"), an employee of Celadon, collided with the rear of a tractor-trailer driven by Plaintiff (the "collision"). Plaintiff filed a Complaint (Doc. 1) alleging that, as a result of the collision, he has suffered severe, permanent, and progressive injuries, including injuries to his back and neck. The Complaint raises four claims: negligence in Count I against both Defendants; negligence per se in Count II against both Defendants;

---
[1] The Court has considered the parties' statements of material facts and drawn all inferences in favor of the non-movant. *Heacker v. Safeco Ins. Co. of Am.*, 676 F.3d 724, 726 (8th Cir. 2012). Included in this section are facts that the Court concludes are properly supported, material, and undisputed.

negligent hiring, training, supervision, and entrustment in Count III against Celadon; and, negligence per se in Count IV against Celadon. Plaintiff also seeks punitive damages on all counts.

Jones attended Mayfield Driving School and obtained the equivalent of the modern-day Class A Commercial Driver's License ("CDL") from the State of Ohio in 1987. Jones began driving with Burlington Motor Freight in 1987 and continued driving with that same company until 2002, when its trucking operations were purchased by Celadon. At the time of said purchase, Celadon screened Jones and determined that he was qualified to operate a commercial motor vehicle under the Federal Motor Carrier Safety Regulations ("FMCSRs"). In 2001 and 2002, Jones received tickets for speeding. Jones incurred no further moving violations until 2013, when he was ticketed while driving a commercial vehicle for failure to yield the right of way. During the ten-year time period prior to the collision, Jones was involved in one motor vehicle accident, in 2013, in which the tractor-trailer he was driving made contact with a guard rail, resulting in no damage to the guard rail and minor damage to the step on the passenger side of the tractor-trailer.

At the time of the collision, Jones was: more than twenty-one years old; could read and speak the English language; was able, by experience or training, to safely operate the commercial motor vehicle which he was driving; was the holder of a current medical examiner's certificate in compliance with 49 CFR § 391.41; was the holder of a valid CDL; had provided Celadon with an annual list of violations in compliance with 49 CFR § 391.27; was not disqualified from operating a commercial motor vehicle for any conviction or violation included in 49 CFR § 391.15; and, had successfully completed a road test for Celadon.

Jones went off duty at 19:11 (EDT) on Saturday, April 5, 2014 and remained off duty continuously through and including 05:33 (EDT) on the morning of April 7, 2014. The period of time during which Jones was continuously off duty between April 5, 2014 and April 7, 2014 totaled thirty-four hours and twenty-two minutes, and included two periods from 1:00 a.m. to 5:00 a.m. Pursuant to the provisions of 49 CFR § 395.3(c)(2), the eight-day time period that included April 5, 2014 ended at 19:11 (EDT) on that date. The eight-day time period during which the collision occurred began at 05:33 (EDT) on April 7, 2014. At the time of the collision, Jones had accumulated approximately 51.5 hours of on duty time during the eight-day time period that began on April 7, 2014.

During the evening of April 9, 2014 and the morning of April 10, 2014, Jones spent 10.5 hours in the sleeper berth of the tractor he was operating. On the morning of April 10, 2014, prior to the collision, Jones had driven for three hours and fourteen minutes, and had been on duty a total of three hours and twenty minutes.

Jones was first diagnosed with sleep apnea in the late 1980s. Due to his sleep apnea, Jones uses a BiPAP machine, which has a SIM card that records usage. Jones completed a Department of Transportation ("DOT") physical examination every year while employed with Celadon, at a clinic operated by an independent medical examiner at the location of the Celadon terminal in Indianapolis, Indiana. Each time Jones reported for a physical examination for renewal of his medical certificate, the independent medical examiner performing the examination obtained a release from Jones' sleep doctor, up until he obtained a new BiPAP machine which recorded all data on a SIM card. After that, the SIM card was read by the independent medical examiner to monitor the usage of the BiPAP machine by Jones. Jones' sleep apnea was diagnosed and treated. In all the time Jones drove for Celadon, he never nodded off while

driving. Celadon was aware of, and through its reliance on the independent medical examiner that performed the physical examinations, appropriately monitored Jones' sleep apnea. Treated sleep apnea is not a disqualifying medical condition for truck drivers under the FMCSRs.

Jones does not recall whether he had a good night's sleep in the days leading up to the day of the collision. However, at the time of the collision, on the morning of April 10, 2014, Jones was well rested and was neither sleepy nor drowsy. During the night of April 8, 2014 into the morning of April 9, 2014, Jones utilized his BiPAP machine for eight hours, forty-four minutes and forty seconds. During the night of April 9, 2014 into the morning of April 10, 2014, Jones utilized his BiPAP machine for seven hours, thirteen minutes and twenty-six seconds without interruption.

Jones had driven on Highway 63 before the crash, and knew that it had intersections where traffic in front of him may be turning left or right. Jones knew that it was important to keep a safe distance on highways where vehicles may be turning directly from the highway. Jones did not keep a safe distance in front of him and did not have sufficient lead time, paying attention to the vehicles in front of him, prior to colliding with Plaintiff's vehicle. In general, if a driver is not alert for a matter of seconds, a collision could happen.

**II.    Legal Standard**

A party is entitled to summary judgment when the evidentiary record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed R. Civ. P. 56(a); *Heacker v. Safeco Ins. Co. of Am.*, 676 F.3d 724, 726-27 (8th Cir. 2012). When a party moves for summary judgment, the court's role is to determine whether the evidentiary record contains genuine issues of material fact. *Connolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006). The court makes this determination by viewing the facts and drawing all

reasonable inferences in favor of the nonmoving party. *Heacker*, 676 F.3d at 726-27. However, a party opposing a properly supported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When the movant has carried its burden under Rule 56(c), the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts," and must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### III. Discussion

#### a. Punitive Damages

Plaintiff seeks the imposition of punitive damages under Counts I-IV against both Celadon and Jones, alleging their conduct and violations "showed complete indifference to or conscious disregard for the safety of others, including Plaintiff." Defendants move for judgment in their favor as to the issue of punitive damages on all four counts, arguing that no evidence exists to support any such award.

Under the proper circumstances, punitive damages may be awarded in negligence actions if the act or omission manifests "such reckless indifference to the rights of others that the law will imply that an injury resulting from it was intentionally inflicted." *Sharp v. Robberson*, 495 S.W.2d 394, 397 (Mo. 1973) (en banc). Punitive damages may also be awarded where the person acting or failing to act is "conscious of his conduct, and, though having no specific intent to injure, must be conscious, from his knowledge of surrounding circumstances and existing conditions, that his conduct will naturally or probably result in injury." *Id*.; *see also* Mo. Approved Jury Instr. (Civil) 10.02 (a jury may award punitive damages where the negligent

conduct "showed complete indifference to or conscious disregard for the safety of others."); *Hoover's Dairy, Inc. v. Mid-America Dairymen, Inc./Special Products, Inc.*, 700 S.W.2d 426, 436 (Mo. 1985) (en banc) ("punitive damages can be awarded in a negligence action but only when the defendant knew or had reason to know that there was a high degree of probability that the action would result in injury.")

The standard of proof for punitive damages is clear and convincing evidence. *Rodriguez v. Suzuki Motor Corp.*, 936 S.W.2d 104, 111 (Mo. 1996) (en banc). This standard requires evidence "which instantly tilts the scales in the affirmative when weighed against evidence in opposition; evidence which clearly convinces the fact finder of the truth of the proposition to be proved." *Lewis v. FAG Bearings Corp.*, 5 S.W.3d 579, 582-83 (Mo. App. 1999).

Here, Plaintiff seeks punitive damages "in an amount sufficient to punish Defendant(s) and deter Defendant(s) and others from like conduct" in all four counts of the Complaint, alleging that the conduct set forth in Counts I and III and the violations set forth in Counts II and IV "showed complete indifference to or conscious disregard for the safety of others, including Plaintiff."

In his First Interrogatories to Plaintiff, No. 23, Jones sought from Plaintiff the specific facts that "showed complete indifference to or conscious disregard for the safety of others which could justify the imposition of punitive damages." Plaintiff's answer to said interrogatory, which has not been supplemented, refers to 49 C.F.R. 390 and states:

> the undisputed facts are that Defendant crashed into the rear of Plaintiff's vehicle without any visual obstructions and Defendant suffered from sleep apnea, was taking medication, had a number of other serious illnesses, Defendant has not produced any training received by Defendant Celadon, and Defendant Jones has a history of accidents and violations. In addition, Plaintiff refers you to any liability expert named, the Missouri Uniform Crash Report, photographs showing the damage to the subject vehicles, Defendant's time logs, ECM data applicable to Defendant's tractor-trailer,

6

> trip reports produced, Defendant's vehicle position history, Defendant's medical history, discovery responses produced in this case, any depositions taken in this case, and Defendant's driver qualification file.

Defendants argue, and the Court agrees, that these purported facts and vague references to documents fail to show any causal connection between the collision and either Jones' health issues and driving history or Celadon's training, much less the clear and convincing proof of complete indifference to or conscious disregard for the safety of others on the part of Defendants necessary for punitive damages. Accordingly, Defendants have carried their initial burden under Rule 56(c).

### 1. Punitives under Counts I and II

In his response, Plaintiff argues that genuine disputes of material fact exist as to whether Defendants violated FMCSR 392.3, whether Jones' sleep apnea made him unfit to operate a commercial motor vehicle at the time of the collision, and whether Jones' poor health condition and circumstances caused him to be fatigued and unfit to operate a commercial motor vehicle. Thus, as to the purported conduct at issue under Count I for negligence, Plaintiff's arguments appear to focus on the allegation contained in paragraph 18(f) of the Complaint, that Jones, and Celadon vicariously, breached their duty of care and were negligent in that "Jones operated the tractor-trailer while his ability and/or alertness was so impaired, or so likely to become impaired, through fatigue, illness or other cause, as to make it unsafe for him to operate the tractor-trailer." As to the violations at issue under Count II for negligence per se, Plaintiff's arguments again appear limited to the similarly-worded paragraph 24(f) of the Complaint, that Jones, and Celadon vicariously, violated FMCSR 392.3, which states:

> No driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired,

>through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle.

49 C.F.R. § 392.3.

However, it is undisputed that although Jones was diagnosed with sleep apnea more than twenty years ago, his sleep apnea was being treated. Furthermore, treated sleep apnea is not a disqualifying medical condition for truck drivers under the FMCSRs. Jones used a BiPAP machine to treat his sleep apnea. In accordance with 49 C.F.R. § 391.41, he completed a physical examination with an independent medical examiner every year while employed with Celadon, most recently on May 24, 2013, and at the time of the collision he possessed a current and valid medical examiner's certificate stating he was physically qualified to drive a commercial motor vehicle. Celadon was aware of, and through its reliance on the independent medical examiner that performed the physical examinations, appropriately monitored Jones' sleep apnea.

In addition, at the time of the collision, Defendants were in compliance with FMCSR 395.3, which prohibits drivers of property-carrying vehicles from being on duty more than 70 hours in an eight-day period. Jones went off duty at 19:11 (EDT) on Saturday, April 5, 2014 and remained off duty continuously through and including 05:33 (EDT) on the morning of April 7, 2014, for a total of thirty-four hours and twenty-two minutes off-duty, including two periods from 1:00 a.m. to 5:00 a.m. Thus, under FMCSR 395.3(c)(2), the eight-day time period during which the collision occurred began at 05:33 (EDT) on April 7, 2014. Furthermore, at the time of the collision, Jones had accumulated approximately 51.5 hours of on duty time during the eight-day time period that began on April 7, 2014. During the evening of April 9, 2014 and the morning of April 10, 2014, Jones spent 10.5 hours off-duty in the sleeper berth of the tractor he was operating. On the morning of April 10, 2014, prior to the collision, Jones had driven for

8

three hours and fourteen minutes, and had been on duty a total of three hours and twenty minutes. Based on the foregoing, at the time of the collision, Jones was not driving in excess of the maximum hours in service promulgated in the FMCSRs. As a result, Defendants were in compliance with 49 C.F.R § 395.3.

Also, although Jones does not recall whether he had a good night's sleep in the days leading up to the day of the collision, he was well rested and was neither sleepy nor drowsy at the time of the collision. During the night of April 8, 2014 into the morning of April 9, 2014, Jones utilized his BiPAP machine for eight hours, forty-four minutes and forty seconds. During the night of April 9, 2014 into the morning of April 10, 2014, he utilized his BiPAP machine for seven hours, thirteen minutes and twenty-six seconds without interruption. Ultimately, the Court finds no evidence that Jones' sleep apnea or any other health issue played any causative role in the collision.

Despite these facts, Plaintiff relies on unsupported generalities regarding the effects of sleep apnea, along with Jones' obesity, sleep apnea and other health issues, in persisting with the claim that Jones was "likely to become impaired through fatigue." But, Plaintiff has produced no evidence contradicting the fact that Jones' sleep apnea and other health issues were treated and monitored in compliance with the FMCSRs. Plaintiff also alleges that Jones was on duty for nearly 74 hours in the eight days leading up to the collision. In doing so, Plaintiff relies on the standard for maximum hours set forth under FMCSR 395.3, which prohibits being on duty in excess of 70 hours in a period of eight days, but at the same time ignores said regulation's own rules describing how those hours and time periods are to be calculated. Contrary to Plaintiff's assertion, Defendants were fully in compliance with the standards for maximum hours set forth under FMCSR 395.3 at the time of the collision. Thus, Plaintiff's argument essentially boils

down to conjecture and speculation that it was possible Jones was unfit to operate a motor vehicle due to fatigue, simply because he had sleep apnea and other health issues and was involved in a collision. However, this claim lacks proper evidentiary support that Jones actually was impaired or likely to become impaired due to fatigue at the time of the collision. At the least, Plaintiff has certainly failed to show in clear and convincing fashion any complete indifference to, or conscious disregard for, the safety of others on the part of Defendants. As a result, as to punitive damages under Counts I and II, summary judgment will be entered in favor of both Celadon and Jones.

### 2. Punitives under Count III and IV

As set forth above, Plaintiff has failed to show sufficient proof of any failure by Celadon to supervise Jones, or to investigate and monitor his ability, fitness and qualifications to operate a commercial motor vehicle with regard to Jones' sleep apnea and other health issues necessary for punitive damages under Count III. Nor has Plaintiff presented clear and convincing evidence of punitive damages under Count IV as to whether Celadon violated FMCSR 392.3. Plaintiff does, however, raise an additional argument relevant to Counts III and IV: that a fact issue exists as to whether Jones' driving history made his operation of a commercial motor vehicle a danger to public safety.

The requirements for qualification of a driver by a motor carrier operating under authority granted by the FMCSA are found in FMCSR § 391.11, and include:

   a. That the driver is at least twenty-one years old;
   b. That the driver can read and speak the English language;
   c. That the driver was able, by experience or training, to safely operate the commercial motor vehicle that he would be driving;
   d. That he is the holder of a valid and current medical certificate;
   e. That he was the holder of a valid CDL;
   f. That he had provided Celadon with an annual list of violations in compliance with 49 CFR § 391.27;

g. That he was not disqualified from the operation of a motor vehicle by virtue of conviction of any state or federal statutes pertaining to the operation of a motor vehicle, violation of any out of service orders, or texting or operating a cell phone in violation of the FMCSRs, as are identified in 49 CFR § 391.15; and
h. That he had successfully completed a road test.

49 C.F.R § 391.11.

Here, it is undisputed that, at the time of the collision, Jones was more than twenty-one years old, could read and speak the English language, was able, by experience or training, to safely operate the commercial motor vehicle which he was driving, was the holder of a current medical examiner's certificate in compliance with 49 CFR § 391.41, was the holder of a valid CDL, had provided Celadon with an annual list of violations in compliance with 49 CFR § 391.27, was not disqualified from operating a commercial motor vehicle for any conviction or violation included in 49 CFR § 391.15, and had successfully completed a road test for Celadon. Thus, on April 10, 2014, Jones was fully qualified under the FMCSRs to operate the commercial motor vehicle that he was driving at the time of the collision.

Plaintiff argues that the record demonstrates what he refers to as "numerous blemishes" on Jones' driving record. As set forth above, the material facts are that during the ten years prior to the collision, Jones incurred only one moving violation in a commercial motor vehicle, for failure to yield the right of way in 2013. During the same ten-year time period, Jones was involved in one motor vehicle accident for which he was at fault, in which the tractor-trailer he was driving made contact with a guard rail, resulting in no damage to the guard rail and minor damage to the step on the passenger side of the tractor-trailer in 2013.

Plaintiff argues that in addition to these two incidents, Jones' record included two speeding tickets, an inspection violation, a failure to report a speeding ticket, and two preventable accidents. There do appear to have been two inspection violations by Jones, in 2008

11

and 2009, but appear to have involved a missing fuse for a light and possibly a damaged mud flap. Plaintiff fails to explain how these minor violations relate to the collision at issue or show Jones was a danger to public safety.

Plaintiff also argues Jones failed to report a speeding ticket, although it appears the ticket at issue was actually for failure to yield the right of way in 2013. In fact, however, Jones did disclose this ticket to Celadon in his annual report, in compliance with FMCSR 391.27, but only failed to notify Celadon at the time the ticket was issued. And, Plaintiff again fails to explain how this minor reporting error is related to the collision or evidences that Jones was a dangerous driver.

In addition, Plaintiff refers to "two preventable accidents" but is grossly mischaracterizing the facts. Plaintiff states vaguely that in 2003, "Jones crashed into private property." In fact, the only evidence as to this incident shows that Jones ran over a set of jack stands that was left under his trailer in a dock area. This minor incident has no relation to the collision at issue, nor does it show Jones to be a dangerous driver. As for the second accident, which Plaintiff describes only as a "motor vehicle crash" in 2008, the evidence shows that Jones was rear-ended while stopped at a stoplight, and that Jones could not have prevented said accident. Plaintiff's attempt to color this second accident as relevant in any way is misguided.

FMCSR 391.25(b)(2) requires a motor carrier to:

> consider the driver's accident record and any evidence that the driver has violated laws governing the operation of motor vehicles, and must give great weight to violations, such as speeding, reckless driving, and operating while under the influence of alcohol or drugs, that indicate that the driver has exhibited a disregard for the safety of the public.

49 C.F.R. § 391.25(b)(2). Viewing the facts as favorably as possible to Plaintiff, during or prior to the time Jones drove for Celadon, it appears he received two speeding tickets in 2001 and

2002, then a ticket for failure to yield to the right of way in 2013. It also appears Jones was involved in two accidents, each of which involved no other vehicles and were unrelated to the aforementioned moving violations. The first was in 2003, where he ran over a set of jack stands that was left under his trailer in a dock area. The second was in 2013, where he made contact with a guard rail, resulting in no damage to the guard rail and minor damage to the step on the passenger side of the tractor-trailer.

In support, Plaintiff cites to *Lacroix v. Spears Mattress Co.*, No. 1:04-CV-1 (WLS), 2005 WL 1924712 (M.D. Ga. Aug. 10, 2005), but the present case is easily distinguishable. In *Lacroix*, the tractor-trailer driver at issue allegedly rear-ended and injured the plaintiff, resulting in the driver's own death. The driver in *Lacroix* had received three moving violations in the six years prior to the collision, at least two of which were in a commercial vehicle, and all of which resulted in accidents involving other vehicles, including one for rear-ending another vehicle. Further, the driver's employer in *Lacroix* may not have even known of these incidents and thus may not have taken any steps to address them.

Unlike in *Lacroix*, the evidence in the present case shows that the two speeding tickets were incurred by Jones well over ten years prior to the collision at issue and did not involve accidents. Furthermore, the speeding tickets were followed by over ten years of violation-free driving, up until Jones received the failure to yield ticket in 2013. The two accidents caused by Jones, in 2003 and 2013, appear minor at most, did not result in tickets, and involved no other vehicles. Under these circumstances, the Court cannot agree that there is evidence sufficient to satisfy the clear and convincing standard required for punitive damages, that being proof which "clearly convinces the fact finder" that Celadon failed to properly consider Jones' driving record in such a way that "showed complete indifference to or conscious disregard for the safety of

13

others." Accordingly, the Court concludes, that, as for punitive damages under Counts III and IV, the motion will be granted in favor of Celadon.

### b. Counts III and IV

Celadon argues that Plaintiff's independent negligence claims under Counts III and IV are barred as a matter of law. Under Missouri law, claims for negligent hiring, entrustment, supervision and training cannot be maintained as alternative theories of liability where the principal admits that its agent was acting in the scope of his employment and as such, is liable under the doctrine of respondeat superior. *McHaffie v. Bunch*, 891 S.W.2d 822, 826-27 (Mo. 1995) (*overruled on other grounds by Rodriguez v. Suzuki Motors*, 936 S.W.2d 104 (Mo. 1996); *see also Coomer v. Kansas City Royals Baseball Co.*, 437 S.W. 3d 184, 205-06 (Mo. 2014). Thus, once an employer has admitted respondeat superior liability for a driver's alleged negligence, it is improper to allow a plaintiff to proceed against the employer on any other theory of imputed liability. *McHaffie*, 891 S.W.2d at 826.

In its Amended Answer, Celadon has admitted that it is "vicariously liable for the negligent acts and/or omissions of Defendant Jones in that Celadon was acting by and through Jones as its agent, servant, and/or employee at the time that Jones engaged in such negligent acts and/or omissions," as alleged in paragraph 19 of the Complaint.

There is an exception to the rule in *McHaffie* where a plaintiff seeks punitive damages. But, as shown above, the Court has concluded that Plaintiff has no viable claim for punitive damages against Defendants under any count, and thus the exception does not apply.

Based on the rule of *McHaffie*, Plaintiff's claims under Counts III and IV are barred as a matter of law, as Celadon has admitted that Jones was acting in the scope of his employment and, as a result, it is vicariously liable for his acts and/or omissions. Therefore, the Court

14

concludes that, regardless of the merits of Plaintiff's claims under Counts III and IV of the Complaint, Celadon is entitled to judgment in its favor on said counts.

## IV. Conclusion

For the foregoing reasons, the Motion of Defendants Celadon Trucking Services, Inc. and Dwight Jones for Partial Summary Judgment (Doc. 118) is **GRANTED**. Judgment is entered in favor of Defendants Celadon Trucking Services, Inc. and Dwight Jones on Plaintiff's claims for punitive damages in Counts I-IV of the Complaint, and in favor of Celadon Trucking Services, Inc. on Counts III and IV of the Complaint.

**IT IS SO ORDERED.**

/s/ *David P. Rush*
DAVID P. RUSH
UNITED STATES MAGISTRATE JUDGE

DATE: September 26, 2017